IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| I. STEPHEN RABIN, on behalf of himself and all others similarly situated, | : : | CIVIL ACTION |
| Plaintiff, | : : | No. 15-551 |
| v. | : : | |
| NASDAQ OMX PHLX LLC, NASDAQ OMX GROUP, INC., *et al.* | : : | |
| Defendants. | : | |

**MCHUGH, J.**                                                                                                                                                                                                   **JULY 20, 2016**

**MEMORANDUM**

Here, a victorious Defendant in a complex securities lawsuit asks me to salt the wounds of the losing Plaintiff, and counsel, by sanctioning them for filing the case.

Lead Plaintiff (hereafter "Plaintiff"), filed the present action in February 2015. He alleged that the Philadelphia Stock Exchange and a group of "Market Makers" who operate on the Exchange had joined in a conspiracy to manipulate options trading by making large trades with each other, timed to deprive investors such as Plaintiff of certain expected dividends. The conspiracy, Plaintiff claimed, amounted to securities fraud under Section 10(b) of the Exchange Act and the regulations issued pursuant to its terms, Rule 10b-5(a) and (c).

Plaintiff's substantive 10(b) claim against Defendants were dismissed because he failed to support several elements of the claim. Specifically, I found that Plaintiff had failed to allege a private cause of action manipulation, as it is defined under Section 10(b). Docket 67, Memorandum Opinion, at 38. I also found that Plaintiff failed to allege reliance under any theory recognized by the Third Circuit, *Id.* at 41. Finally, I found Plaintiff failed to allege facts giving rise to a strong inference of Defendants' *scienter*. *Id.* at 43–44.

Defendant Sumo now seeks sanctions, arguing that Plaintiff and counsel violated Rule 11 of the Federal Rules of Civil Procedure by making and pursuing a claim that they knew or should have known was frivolous. The Private Securities Litigation Reform Act requires that I not only resolve this motion, but also conduct my own review of the conduct of *every* party and counsel in this case for compliance with Rule 11. For the reasons below, I find that no party or counsel has violated that Rule, and decline to impose sanctions.

I.  PSLRA Requires Rule 11 Sanctions Review

Congress adopted the PSLRA in 1995. Its supporters opined that "[p]rivate securities litigation is an indispensable tool with which defrauded investors can recover their losses without having to rely upon government action," but that the contemporary litigation system was being "undermined by those who seek to line their own pockets by bringing abusive and meritless suits." H.R. Conf. Rep. No. 104-369, at 31 (1995). The Act, according to supporters, "implements needed procedural protections to discourage frivolous litigation." *Id.* at 32. The Act's opponents included President Bill Clinton, who expressed in his veto of the Act the concern that the law would "have the effect of closing the courthouse door on investors who have legitimate claims." Presidential Veto Message on the Private Securities Litigation Reform Act, Dec. 20, 1995. Congress overrode the veto, and the Act became law on December 22, 1995.

Section 101 of the Act amended the Securities Act of 1933 to add a provision, now codified at 15 U.S.C. § 78u-4(c)(1), which requires a court, after a final adjudication of a case, to "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." The section also

2

mandates a court impose sanctions if it finds a violation of Rule 11, and creates presumptions about the appropriate sanctions depending on the severity of the violation. 15 U.S.C. § 78u-4.

The statute requires a court to review the conduct of every party and counsel for compliance with Rule 11, but it does not change the substantive requirements of Rule 11.  I am persuaded by the view of the Second Circuit that:

> [t]he PSLRA … does not in any way purport to alter the *substantive standards for finding a violation of Rule 11*, but functions merely to reduce courts' discretion in choosing whether to conduct the Rule 11 inquiry at all and whether and how to sanction a party once a violation is found.

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) (emphasis in original) (citing *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)).

Rule 11 imposes certain obligations on any attorney that signs, files, submits, or advocates for a pleading, motion, or other paper in court.  The attorney must make a reasonable inquiry to ensure that for every pleading motion, or other paper:

> (1) it is not being presented for any improper purpose, …
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  More concisely, Rule 11 requires that an attorney signing any document to be filed in court must make "a reasonable inquiry both as to the fact of the law at the time a document was submitted […] ."  *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994).

Rule 11's obligations apply through every stage of litigation.  A party or counsel may not reassert legal arguments or factual claims that it has learned are unreasonable or unfounded.  *In re Star Gas Sec. Litig.*, 745 F.Supp.2d 26, 39 (D.Conn. 2010) (finding plaintiff violated Rule 11 by reasserting allegations it had notice were frivolous).

Rule 11 sanctions do not inexorably follow from losing a case.  Courts must only impose sanctions under Rule 11 "in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) (citation omitted).  Rule 11's "target is *abuse*—the rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Galardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987) (emphasis added).

II.   Discussion of Parties' and Counsel's Conduct in This Case

Defendant Sumo has moved for sanctions against Lead Plaintiff's Counsel and Lead Plaintiff himself.  As required by the PSLRA, I also independently evaluate the conduct of every party and counsel for compliance with Rule 11.

a.   Sanctions against Plaintiff's Counsel and Plaintiff

Because Sumo has filed a motion in which it argues Plaintiff and Plaintiff's Counsel violated Rule 11, I will evaluate the compliance of Plaintiff and Plaintiff's Counsel with the Rule first.  I have no trouble finding that Plaintiff and Plaintiff did not violate paragraphs (b)(1), (b)(2), or (b)(4).  There has been no hint during this litigation that Plaintiff or Plaintiff's Counsel have made any representations to the court "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).  When

4

I dismissed Plaintiff's Complaint, I determined that Plaintiff had failed to state a claim under Section 10(b) of the Exchange Act.  Docket 167, Memorandum Opinion, at 31–43.  Although I was not persuaded that the law recognized Plaintiff's claim under the Act, the claim "was not patently unmeritorious or frivolous." *Ario*, 618 F.3d at 297–98 (quotation omitted) (reversing district court's sanctions).  Accordingly, there was no violation of Rule 11(b)(2).  Finally, Plaintiff and Plaintiff's Counsel, largely because they are the instigators of this action, make no "denials of factual contentions" that are not "warranted on the evidence."  Fed. R. Civ. P. 11(b)(4).

The analysis of whether Plaintiff and Plaintiff's Counsel violated the remaining paragraph of Rule 11 is significantly more complicated.  Sumo argues that Plaintiff and his Counsel violated Rule 11(b)(3) in two ways.  First, Sumo accuses Plaintiff and Plaintiff's Counsel of failing to make a reasonable inquiry into the factual basis of their claims against Sumo before filing suit.  Def. Sumo's Mot. Amend Jud. to Incl. Mandatory Rule 11 Findings and Impose Sanctions (hereinafter "Sumo's Mot. Amend") at 13.  According to Sumo, if Plaintiff and Plaintiff's Counsel had properly examined the trading data they received from the Philadelphia Exchange, it would have been obvious that Sumo did not engage in the matched options trades that Plaintiff argues were fraudulent.  Instead of engaging in symmetrical trades within a single options series, the data only show Sumo made asymmetrical trades with an option class. Def. Sumo's Reply Mot. Amend. at 3–4.  Second, Sumo complains that its attorneys told Plaintiff's Counsel that Sumo did not engage in the allegedly fraudulent trading strategy, but Plaintiff's Counsel continued to press claims against Sumo and repeat factual allegations that it knew had no basis.  In brief, Sumo's position is that Plaintiff and his Counsel violated Rule 11

by failing to realize there was no basis to file its claims in the first place, and then continued to violate Rule 11 by reasserting claims they had notice were baseless.

Plaintiff and Plaintiff's Counsel defend themselves by arguing that the facts at all times supported the core of their claims against Sumo. The crux of their argument is that Sumo is defining "matched trades" too narrowly in its sanctions motion. Plaintiff and his Counsel agree that Sumo did not engage in trades that were "precisely symmetrical." Ex. 3 to Pl. Mem. Opp. Sumo's Mot. Amend., Letter from Plaintiff's Counsel to Sumo's Counsel, May 10, 2016 at 4. Plaintiff and his Counsel contend that Sumo's focus on whether Sumo engaged in exactly symmetrical trades mischaracterizes their claims. The heart of Plaintiff's claim was that Sumo and other Market Makers were arranging massive trades with each other in order to capture dividends from retail investors such as Plaintiff, and available trading records supported Plaintiff's decision to include Sumo as a defendant. The difference between trades that were exactly symmetrical and those that were not, Plaintiff and Plaintiff's Counsel argue, is not an essential part of their claims. And anyway, Plaintiff and Plaintiff's counsel add, Sumo's trades *were* matched, when that term is defined appropriately in the context of the alleged conspiracy: "Sumo's slightly asymmetric trading with HAP was 'matched' for purposes of the conspiracy and their mutual goals to capture the dividends." Pl. Mem. Opp. Sumo's Mot. Amend. at 2, n.2.

Plaintiff and his counsel are not faultless, but I do not find that they have violated Rule 11. I do not read Plaintiff's claims as being so narrow that they only challenge symmetrical trades in a single option series. Sumo is correct when it points out that Plaintiff refers to "offsetting open long and open short positions in the same option series" when explaining his allegations. Complaint at ¶ 43. However, much of the Complaint is devoted to explaining the challenged strategy with illustrative examples rather than specific claims against specific

Defendants. For example, Paragraph 43 describes the allegations of market makers in general, but does not actually level any specific allegations against Sumo. *Id.* at ¶ 43. Plaintiff's explanations of how the alleged conspiracy operated were not entirely precise as to every Defendant, but the broad language of the Counts in the Complaint makes it clear to me that Plaintiff's actual claims were not limited to symmetrical trading within a single options series. *See* Complaint at ¶¶ 92–106. Plaintiff's target was "massive matched trades" through which "Defendants utilized their margin and other privileges to falsely increase volume in the options to benefit themselves." Complaint at ¶ 96.

Plaintiff did make a reasonable inquiry into the factual basis for these claims. And he did not persist in making claims that he knew were baseless. In their Response to Sumo's motion, in affidavits from Plaintiff's Counsel, and in letters between counsel for Sumo and Plaintiff attached to the Response, Plaintiff and Plaintiff's Counsel show that they had a reasonable basis for their claim that Sumo was engaging in large matched (if not symmetrical) trades designed to capture open interest. Plaintiff's Counsel explains that before naming Sumo as a defendant, Counsel "cull[ed] out [market] participants whose volume of dividend capture trading was insubstantial" and only "named the specific defendants who engaged in pre-arranged trades […] ." Pl. Mem. Opp. Sumo's Mot. Amend. at 1. Plaintiff's additional exhibits demonstrate that his Counsel gave consideration to Sumo's claims that it was an improper defendant, reviewed the basis of their claims, and confirmed that the evidence showed Sumo was engaging in trades Plaintiff believed were part of a conspiracy to defraud investors of open interest. I am satisfied that throughout the litigation, Plaintiff and Plaintiff's counsel adequately investigated the basis of the claims they were *trying* to make.

It would seem that Plaintiff and Plaintiff's counsel erred in their *description* of certain details of the trading strategy at issue.  Plaintiff's allegations do not make it entirely clear that Plaintiff was challenging both symmetrical trades within a series of options and nearly symmetrical trades with a class—but not within a series—of options.[1]  Nor did Plaintiff and Plaintiff's counsel make it clear that not all conduct on the part of the Market Makers was exactly the same.  For example, Sumo points out the Complaint alleges the Market Makers were taking advantage of an OCC policy permitting Market Makers to maintain identical long and short options contracts at the end of a trading day.  Sumo's Reply at 2.  This advantage would not apply to a Market Maker, such as Sumo, that was not attempting to maintain identical long and short positions.

It can therefore be said that Plaintiff was, at various points in this litigation, imprecise.  But imprecision is not abuse of the litigation process.  Plaintiff and Plaintiff's Counsel clearly did not file their Complaint by simply copying claims from other lawyers, as happened in *Garr v. U.S. Healthcare, Inc.* 22 F.3d at 1280 (upholding sanctions for two attorneys who "filed the complaint [a third attorney] had prepared, changing only the name of the plaintiffs and the number of shares owned.").  As discussed above, Plaintiff and his Counsel had a reasonable basis for their claim; it is not the case that Plaintiff's claims "utterly lack[ed] evidentiary support."  *See In re Star Gas Sec. Litig.*, 745 F.Supp.2d at 34.

The worst that can be said of Plaintiff and Plaintiff's Counsel is that they painted with too broad of a brush and left certain details out of their papers.  However, the Federal Rules instruct that a complaint should be "a short and plain statement."  Fed. R. Civ. P. 8(a)(2).  Plaintiff's Complaint was over 30 pages long and makes an effort to explain both the normal

---

[1] I disagree with Sumo that the opposite is true—that Plaintiff's allegations were clearly limited to symmetrical trades in one series.

operation of a complex securities market and a sophisticated strategy for manipulating the market.  The Complaint might have collapsed under its own weight if Plaintiff had detailed every nuance of every Market Maker's participation in the alleged conspiracy.  Plaintiff and Plaintiff's Counsel did not find the perfect balance between stating their allegations *completely* and stating their allegations *briefly*, but they were not so far off that their attempt was an abuse of the litigation process.  Similarly, in other motions and memoranda filed with the Court, I have not found any statements that were so inaccurate or incomplete to the extent that sanctions are justified.

I do not find that Plaintiff or Plaintiff's Counsel violated Rule 11.  Because I find no violation, I do not need to consider imposing sanctions.

      b.  Sanctions against Defendants and Defendants' Counsel

I have reviewed the conduct of all Defendants and Defendants' Counsel and I do not find that any has violated Rule 11.  The briefs of all Defendants were well-reasoned and well-written.  There are no indications that any party filed any documents for an improper purpose.  Fed. R. Civ. P. 11(b)(1).  I did not accept all of Defendants' arguments for dismissing Plaintiff's lawsuit, but none of Defendants' arguments were frivolous.  Fed. R. Civ. P. 11(b)(2).  I am aware of no factual contentions or denials by any Defendant that lacked support.  Fed. R. Civ. P. 11(b)(3)–(4).

III.    Conclusion

This was a case that addressed a highly sophisticated, highly controversial trading strategy. The matter is so complex that Counsel on both sides made colorable arguments that the SEC has or has not prohibited the strategy, and it is difficult to say which is correct. The matter was superbly argued on all sides.  There is no basis for imposing sanctions for violations of Rule 11 on any party or counsel in this case.  My Order of April 21, 2016 will be amended to reflect these findings.


      /s/ Gerald Austin McHugh
United States District Judge